JERRY RITTER, APPELLANT, v. HAWKEYE-SECURITY
INSURANCE COMPANY, A CORPORATION, ET AL., APPELLEES.

135 N. W. 2d 470

Filed May 28, 1965. No. 36002.

McGinley, Lane, Mueller & Shanahan, for appellant.

Firmin Q. Feltz, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

BOSLAUGH, J.

This is a proceeding under the Workmen's Compensation Act brought by Jerry Ritter, the plaintiff, against Hoke's Cafe, Inc., hereinafter referred to as the defendant. The Hawkeye-Security Insurance Company is the workmen's compensation liability insurance carrier for the defendant employer.

The compensation court found that the plaintiff had sustained an injury to his hands as a result of a contact dermatitis arising out of and in the course of his employment and entered an award in favor of the plaintiff. The defendants waived rehearing before the compensation court and appealed directly to the district court.

The district court found that the plaintiff's alleged disease was not characteristic of or peculiar to the plaintiff's occupation, that the general public was subject to the same risks, and dismissed the action. The plaintiff's motion for new trial was overruled and he has appealed.

The record shows that the plaintiff was employed as a cook's helper and dishwasher by the defendant for about 2 years. The plaintiff's duties included washing dishes, glassware, pots, and pans. Dishes were washed by machine using a soap or detergent known as "Gitz." The Gitz was dipped from a barrel and placed in the dishwashing machine by the plaintiff. Pots and pans were washed by hand using a soap powder known as "JaDa." Glassware was washed by hand using a soap known as "Besol." The plaintiff also used a scouring powder known as "Ajax" and a bleaching agent known as "Clorox."

The plaintiff's hands developed a rash while he was employed by the defendant. The operator of the restaurant referred the plaintiff for medical attention and the condition seemed to improve. In July or August 1963;

the plaintiff developed a severe rash upon his hands. His fingers became red and scaly. On August 27, 1963, the plaintiff was examined by Dr. L. C. Potts. At that time the plaintiff had a severe dermatitis on both hands. The skin was dry, scaly, and cracked in areas over the entire hand. Where the skin was cracked it was oozing and extremely tender. Dr. Potts recommended that the plaintiff remove himself from the defendant's employment.

The plaintiff terminated his employment with the defendant on August 27, 1963. The condition of his hands responded to treatment and on December 7, 1963, the plaintiff was discharged as being able to return to work. Dr. Potts testified that it was his opinion that the plaintiff's dermatitis was caused by the cleansing agents used by the plaintiff in his employment by the defendant. There is no medical evidence to the contrary in this case.

Dr. Potts also testified that contact dermatitis is a superficial inflammation of the skin caused by a sensitizing or irritating agent. It is a condition that occurs frequently and is common among housewives. Detergents and cleansing chemicals are common causes of the condition. Some persons are more sensitive than others and are more apt to develop a dermatitis.

The evidence in this case establishes that the plaintiff was injured as the result of a contact dermatitis which arose out of and in the course of his employment by the defendant. The controlling question is whether the injury was caused by an occupational disease within the meaning of the Workmen's Compensation Act.

An occupational disease must be a natural incident of a particular occupation and must attach to that occupation a hazard which distinguishes it from the usual run of occupations and which is in excess of that attending employment in general. Russo v. Swift & Co., 136 Neb. 406, 286 N. W. 291.

The Workmen's Compensation Act defines an occupational disease as "a disease which is due to causes

and conditions which are characteristic of and peculiar to a particular trade, occupation, process or employment and shall exclude all ordinary diseases of life to which the general public are exposed." § 48-151, R. R. S. 1943.

The requirement of the statute is that the cause and conditions of the disease be characteristic of and peculiar to the employment and that the disease be other than an ordinary disease of life. The statute does not require that the disease be one which originates exclusively from the employment. The statute means that the conditions of the employment must result in a hazard which distinguishes it in character from employment generally. Riggs v. Gooch Milling & Elevator Co., 173 Neb. 70, 112 N. W. 2d 531; Underwood v. National Motor Castings Division, 329 Mich. 273, 45 N. W. 2d 286; Samels v. Goodyear Tire & Rubber Co., 317 Mich. 149, 26 N. W. 2d 742; LeLenko v. Wilson H. Lee Co., 128 Conn. 499, 24 A. 2d 253.

The evidence in this case does not establish that the plaintiff's disease is an ordinary disease of life. The evidence is that contact dermatitis results from the use of a sensitizing or irritating agent and that detergents and cleansing chemicals are common causes of the disease. The evidence establishes that the cause and conditions of the disease are characteristic of and peculiar to the occupation of dishwashing and that dishwashing involves a hazard which is greater than that which occurs in employment generally.

Under the evidence in this case the plaintiff is entitled to recover compensation for an injury resulting from an occupational disease. The plaintiff is entitled to recover compensation for total temporary disability at the rate of $37 per week for 9 2/7 weeks, and medical expenses in the amount of $132.46.

The plaintiff claims travel expense in the amount of $32. Apparently this expense resulted because the plaintiff moved from Ogallala, Nebraska, where the in-

jury occurred, to Venango, Nebraska, and then received medical attention at Grant, Nebraska. The record fails to show facts sufficient to require the defendants to reimburse the plaintiff for this expense.

The judgment of the district court is reversed and the cause remanded with directions to enter judgment in conformity with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.