FRITZ v ST JOSEPH COUNTY DRAIN COMMISSIONER

Docket No. 234335. Submitted January 8, 2003, at Grand Rapids. Decided
    January 21, 2003, at 9:05 A.M.

John B. Fritz and others petitioned the St. Joseph County Drain Com-
    missioner to improve a drain to alleviate flooding caused by a drain
    obstruction and that affected three privately owned parcels of
    realty. The commissioner appointed a three-member board of deter-
    mination, which decided after a hearing that the improvements
    sought by the petitioners were necessary to public health, conve-
    nience, and welfare. After learning that one board member was a
    first cousin once removed of Fritz, the commissioner set aside the
    board's determination of necessity and convened a second board of
    determination. The second board determined after a hearing that
    the proposed improvements were solely for private benefit and
    thus were not necessary to public health, convenience, or welfare.
    Fritz brought an action for mandamus in the St. Joseph Circuit
    Court against the drain commissioner and the board of determina-
    tion, seeking a court order compelling the commissioner to invali-
    date the second board's decision and reinstate the original board's
    determination of necessity. The court, James P. Noecker, J., denied
    the requested relief. Fritz appealed.

    The Court of Appeals *held*:

    1. Subsection 72(1) of the Drain Code, MCL 280.72(1), expressly
    affords the drain commissioner the discretion to appoint a board of
    determination, which must consist of disinterested property own-
    ers, and implicitly affords the commissioner the discretion to
    choose the members of the board. A familial relationship presents
    an "interest" for the purposes of subsection 72(1). The Drain Code
    implicitly affords a drain commissioner the discretion to remedy
    errors in the appointment of members of a board of necessity. In
    this case, defendant drain commissioner did not exceed the discre-
    tion provided by the Drain Code in unilaterally setting aside the
    original board's determination of necessity after the commissioner
    discovered that a member of the original board was a cousin of
    Fritz.

    2. The circuit court did not err in upholding the second board's
    determination that the proposed improvements were not a public

necessity. The determination was supported by competent, material, and substantial evidence indicating that the proposed improvements were exclusively for private, not public, benefit.

Affirmed.

DRAINS — DRAIN IMPROVEMENTS — BOARDS OF DETERMINATION — DRAIN COMMISSIONERS.

The Drain Code provides a drain commissioner with discretion to appoint a board of determination, composed of three disinterested property owners, to decide the public necessity of a proposed drain improvement and to set aside a board's determination if the drain commissioner learns that a board member has a familial relationship with a person seeking the improvement (MCL 280.72[1]).

*Reed Stover, P.C.* (by *Patricia R. Mason*), for the plaintiff.

*Douglas K. Fisher* for the defendants.

Before: METER, P.J., and NEFF and DONOFRIO, JJ.

DONOFRIO, J. Plaintiff appeals as of right from the circuit court's order denying his request for injunctive relief in the form of mandamus. This case arises out of a petition for the improvement of the Portage Creek Drain located in St. Joseph County.

The Portage Creek Drain was established in the early 1900s. Plaintiff, along with four other property owners, signed a petition seeking the improvement of the drain in order to alleviate flooding caused by an obstruction in the drain. In December 1997 they filed the petition for maintenance and improvement of the drain with the St. Joseph County Drain Commissioner, pursuant to MCL 280.191. Pursuant to § 72 of the Drain Code, MCL 280.72, the commissioner appointed a three-member board of determination in April 1998. The board conducted a hearing of necessity regarding the petition for improvements on December 16, 1998. Following the hearing, the board

unanimously decided that the improvements to the drain, as requested in the petition, were necessary to public health, convenience, and welfare. Accordingly, planning for the improvements commenced.

Nevertheless, in February 1999 the commissioner ordered that the determination of necessity be set aside and that a new board of determination be convened, consisting of three new members, because of the alleged "interest" of one of the original board members. The applicable statute mandates that the board consist of three "disinterested" members. MCL 280.72. Specifically, it was determined that one of the original members was the first cousin once removed of plaintiff.

The second board of determination found that the proposed improvements to the drain were solely for private benefit, as opposed to public health and welfare, and therefore were not a matter of necessity and thus were outside of the scope of the Drain Code, MCL 280.1 *et seq.* Accordingly, the petition was dismissed.

In response to the second board's determination, plaintiff filed the instant action requesting injunctive relief in the form of mandamus to compel the drain commissioner to invalidate the second board's decision and reinstate the first board's determination of necessity. The trial court denied relief, ruling that the commissioner had the discretion to set aside the first board's ruling, to convene a second board of determination, and to find that plaintiff's cousin was disqualified from serving on the board. Specifically, in determining that the commissioner's act of convening a second board was within the discretion afforded his office, the trial court stated:

A Board of Determination is to be composed of "3 disinterested property owners." MCL 280.72. Thus a person who is an "interested person" may not be qualified to sit on a Board of Determination. Plaintiff argues to this court that his cousin was not an interested person merely by reason of their relationship. This court agrees to the extent that the Drain Commissioner is not compelled to find that the cousin was disqualified. However, this court disagrees that the Drain Commissioner could not so find. Clearly, the Drain Commissioner was invested with the discretion to so find. More important, the Drain Commissioner was in a better position than is this court upon the type of record which has been presented to evaluate the propriety of plaintiff's cousin serving as a member of the Board.

Plaintiff's first contention on appeal is that the circuit court erred in construing the Drain Code to provide the commissioner with discretion to unilaterally set aside the original order of necessity. Plaintiff further argues that even if the commissioner was vested with such discretion, he abused it by setting aside the original board of determination's findings.

A trial court's decision to grant or deny injunctive relief is reviewed on appeal for an abuse of discretion. *Nicholas v Meridian Charter Twp Bd*, 239 Mich App 525, 534; 609 NW2d 574 (2000). "An abuse of discretion is found only if an unprejudiced person, considering the facts on which the trial court acted, would say that there was no justification or excuse for the ruling made," *Ellsworth v Hotel Corp of America*, 236 Mich App 185, 188; 600 NW2d 129 (1994), or "the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Barrett v Kirtland Community College*, 245 Mich App 306, 325; 628 NW2d 63 (2001). Moreover, we review de novo the trial court's interpreta-

tion of a statute, which constitutes a question of law. *Rickwalt v Richfield Lakes Corp*, 246 Mich App 450, 468; 633 NW2d 418 (2001); *Saginaw Co v John Sexton Corp of Michigan*, 232 Mich App 202, 214; 591 NW2d 52 (1998).

The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998). The first criterion in determining intent is the specific language of the statute. *In re MCI*, 460 Mich 396, 411; 596 NW2d 164 (1999). The fair and natural import of the terms used, in view of the subject matter of the law, should govern. *In re Wirsing*, 456 Mich 467, 474; 573 NW2d 51 (1998). The Legislature is presumed to have intended the meaning it plainly expressed. *Nation v WDE Electric Co*, 454 Mich 489, 494; 563 NW2d 233 (1997). "Courts may not speculate regarding the probable intent of the Legislature beyond the language expressed in the statute." *Cherry Growers, Inc v Agricultural Marketing & Bargaining Bd*, 240 Mich App 153, 173; 610 NW2d 613 (2000). If the plain and ordinary meaning of the language is clear, judicial construction is normally neither necessary nor permitted. *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999).

Our review of the Drain Code reveals that MCL 280.72 only partly addresses the commissioner's obligations with respect to the instant situation, and we have not found any case law directly on point. There is an action for a circuit court determination of necessity available for a party aggrieved by the board of determination's findings, MCL 280.72a, and an appeal for municipalities where appropriate, MCL 280.72.

However, the statute fails to set forth any method for correction of alleged errors made by the commissioner in the institution of a board of determination. The Drain Code provides as follows:

> As soon as practicable, after the filing of a petition, the commissioner . . . *may* appoint a board of determination composed of three *disinterested* property owners. If the commissioner is disqualified or chooses not to appoint the board of determination, the commissioner shall immediately file a copy of the petition with the chairperson of the county board of commissioners, together with a statement signed by the commissioner, showing that he or she is disqualified or chooses not to act in appointing a board of determination. [MCL 280.72(1) (emphasis added).]

We read MCL 280.72(1) to expressly afford the commissioner the discretion to appoint the board of determination and to implicitly afford the commissioner the discretion to choose the individual members of the board of determination. However, in exercising this discretion, the commissioner is bound by the plain language of the statute in that he must designate only "disinterested property owners" to the board of determination. According to the Supreme Court, citizens are entitled to a board of determination composed of impartial decision makers who have not prejudged the issues. *Crampton v Dep't of State*, 395 Mich 347, 351; 235 NW2d 352 (1975). In *Crampton*, the Court identified four situations that would call into question the decision maker's potential for bias or partiality, situations where the decision maker:

> (1) has a pecuniary interest in the outcome;
> (2) has been the target of personal abuse or criticism from the party before him;

(3) is enmeshed in other matters involving petitioner; or

(4) might have prejudged the case because of prior participation as an accuser, investigator, fact finder or initial decisionmaker. [*Crampton, supra,* 395 Mich 351 (internal punctuation altered).]

Although we recognize that the present situation does not fit neatly into one of these situations, nothing in *Crampton* indicates that it has set forth an exclusive list. The law generally recognizes familial relationships as presenting an "interest." Specifically, MCR 2.003(B)(6)(a) disqualifies a judge as a decision maker if "the judge or the judge's spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person . . . is a party to the proceeding . . . ." We also note that the rule is the same for the disqualification of case evaluators pursuant to MCR 2.403(E), a process that is non-binding.

Taking all this into account, we therefore find a familial relationship presents an "interest" for the purposes of MCL 280.72(1). As such, plaintiff's cousin was an interested party and could not sit on the board of determination. Accordingly, we hold that the commissioner was compelled to find, as he did, plaintiff's family member disqualified from sitting on the board of determination, contrary to the circuit court's statement on this issue.

In light of our holding that a familial relationship presents an "interest" for the purposes of MCL 280.72(1), we now must determine whether the commissioner was empowered by MCL 280.72(1) to correct his own error. In other words, we must consider if the Drain Code provides the commissioner with the discretion to act unilaterally to set aside the original order of necessity after discovering that one of the

members on the board was plaintiff's cousin. As noted, the Drain Code provides that before a project may proceed, the commissioner has the discretion to appoint an administrative tribunal consisting of three "disinterested" property owners who will be charged with making a determination regarding the overall necessity of the project. MCL 280.72(1); *McGregor v Coggins Drain Bd*, 179 Mich App 297, 299; 445 NW2d 196 (1989). We construe the Drain Code as implicitly affording the commissioner the discretion to remedy his own errors in the exercise of his discretion over appointing members of the board. We think any other interpretation would serve only to prolong and convolute many potential critical decisions and actions, a result contrary to the intention of the drafters of the Drain Code.

We also recognize that the Supreme Court has provided for this type of efficient resolution. In *In re Fitch Drain No 129*, 346 Mich 639, 647; 78 NW2d 600 (1956), the Court stated that "[w]e . . . are not inclined to reverse proceedings taken under the general drain law absent showing of very substantial faults. Technical questions respecting . . . adherence to procedures set forth in drain statutes should, whenever possible, be raised and decided before subsequent and expensive steps are taken, thus permitting the authorities [a] timely new start if such be deemed necessary." Accordingly, in the instant case, the commissioner's exercise of discretion was justifiable, whereby upon recognition of the invalidating interest of a board member, he acted in an attempt to resolve the situation before "subsequent and expensive steps" were taken (e.g., costly construction of

improvements, the institution of lawsuits, and so forth).

Plaintiff's next claim on appeal is that the circuit court committed error in deciding that the second board of determination's decision was based on law and adequate evidence on the record. Proceedings under the Drain Code, other than condemnation proceedings, are administrative proceedings. A decision of an administrative agency is reviewed by a circuit court to determine if the decision was authorized by law and supported by competent, material, and substantial evidence on the whole record. " 'Substantial evidence is any evidence that reasonable minds would accept as adequate to support the decision; it is more than a mere scintilla but may be less than a preponderance of the evidence.' " *Barak v Oakland Co Drain Comm'r*, 246 Mich App 591, 597; 633 NW2d 489 (2001), quoting *MEAPAC v Secretary of State*, 241 Mich App 432, 444; 616 NW2d 234 (2000). A circuit court's review of the decision of an administrative agency is subject to appellate review, but the appellate court is limited to determining whether the circuit court applied the correct legal principles and whether it committed clear error in its factual review by misapprehending or grossly misapplying the substantial evidence test to the agency's factual findings. A decision is clearly erroneous when, on review of the whole record, the appellate court is left with the definite and firm conviction that a mistake was made. *Id.*

Generally, this Court will presume that an administrative body has acted correctly and that its orders are valid. *Hitchingham v Washtenaw Co Drain Comm'r*, 179 Mich App 154, 159; 445 NW2d 487

(1989). Michigan law dictates that when there is sufficient evidence to support an agency's decision, a court may not substitute its judgment for that of the agency, even if the court would have reached a different result. *In re Kurzyniec Estate*, 207 Mich App 531, 537; 526 NW2d 191 (1994). Similarly, a court will not set aside findings merely on the basis that alternative findings could also have been supported by substantial evidence on the record. *In re Payne*, 444 Mich 679, 692; 514 NW2d 121 (1994). Ultimately, "[g]reat deference should be given to an agency's choice between reasonable differing views as influenced by administrative expertise." *In re Kurzyniec Estate*, *supra* at 537.

Affording the board of determination requisite deference, we find that the board in this case relied on competent, material, and substantial evidence in order to justify its decision that the project was not necessary for public health and welfare. While there is nothing on the record to suggest that the board's meeting was transcribed, there is evidence supporting the proposition that the improvements to the drain were exclusively for private, as opposed to public, benefit. The minutes of the board's meeting reflect that the improvements at issue are for the exclusive benefit of plaintiff's private agricultural land. The minutes specify that the drain was clogged wholly at plaintiff's property line, and the pictures submitted to the board depict flooding only on three parcels of private property. Further, there was testimony before the board to the effect that the blockages in the drain were only temporary, and not permanently blocking surface water, and therefore not a matter of public necessity or welfare. Our review of the record reveals

there is a lack of evidence regarding the public neces-
sity of the drain improvements, especially as a result
of the fact that plaintiff failed to provide any particu-
lar evidence leading to a conclusion that the drain
improvements were for the public benefit. For these
reasons we find that the trial court correctly upheld
the second board of determination's decision. *Barak,
supra* at 597.

Affirmed.