*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LATOYA CHAVIES,

        Petitioner-Appellant,

v

DEPARTMENT OF HEALTH AND HUMAN
SERVICES,

        Respondent-Appellee.

UNPUBLISHED
June 17, 2021

No. 352552
Ingham Circuit Court
LC No. 19-000065-AA

Before: GADOLA, P.J., and SAWYER and RIORDAN, JJ.

PER CURIAM.

Petitioner appeals by delayed leave granted[1] the circuit court's decision affirming an administrative law judge's denial of petitioner's request for expungement from the Michigan Child Abuse Neglect Central Registry ("the Registry"). We reverse and remand.

## I. BACKGROUND

Respondent investigated petitioner regarding allegations of child abuse. A complaint was filed against petitioner alleging that, after returning home from work, petitioner punched her child, TQ, multiple times in the face and arm. TQ received injuries to the face, and petitioner kept TQ home from school for the following two days. Respondent interviewed the children, and TQ received a medical examination. Petitioner did not deny the injuries to TQ; rather, petitioner contended that TQ received the injuries in a fistfight with a sibling, DC. TQ acknowledged that the fistfight occurred; however, TQ stated that the injuries to the face came from petitioner's abuse and not the fight. After completing its investigation, respondent determined by a preponderance of the evidence that petitioner physically abused TQ. Furthermore, as part of its investigation, respondent completed a risk assessment and determined that petitioner was a "high risk" for further child abuse; petitioner was assessed three points for "neglect" and four points for "abuse." This

---

[1] *Chavies v Dep't of Health and Human Servs*, unpublished order of the Court of Appeals, entered May 19, 2020 (Docket No. 352552).

placed petitioner into a "Category II," which, under MCL 722.628d(1)(d), mandated that petitioner's name be placed on the Registry.

Petitioner sought judicial review and asked that her name be expunged from the Registry. An ALJ held a hearing in which it took evidence from both parties, including witness and victim testimony. After considering all the evidence, the ALJ determined that, although respondent had proven by a preponderance of the evidence that petitioner abused TQ, respondent had "failed to justify that Petitioner was a high risk of abuse." The ALJ explained that its decision rested on respondent's failure to show the scoring for individual questions that were part of the risk assessment:

> To support how a "high" risk level was calculate[d], Respondent presented a risk assessment of abuse (Exhibit C, pp. 1-2). The document listed the questions and answers that allegedly justified the "high" risk of abuse. The document did not include corresponding scoring for each question.

> * * *

> The presented CPS investigation report included a partial verification of scoring. Petitioner was assessed one point each for using inappropriate discipline and a history of domestic violence (based on Petitioner's statement that she was a victim in the past). The presented questions only justified 2 points.

> Consideration was given to finding additional points based on a prior referral for abuse (Question A2) and that there are 3 or more children in the household (Question A5). Assessing points for A2 and A5, in addition to points noted on the CPS investigation report) would result in a score of 4. The temptation is resisted for two reasons.

> A risk assessment response is known to result in either adding points, subtracting points, or not assessing any points. Thus, even if it is found that Petitioner's circumstances were undisputedly the "riskiest" of risk assessment options, it cannot be assumed that the response resulted in points to Petitioner's overall score. It also cannot be assumed that assessments which were indicative of less risk should not have resulted in deductions to Petitioner's overall risk score.

> Secondly, if a risk assessment is material to Central Registry placement, scoring should be verified. Testimony from a CPS investigator that there is no way to verify the scoring of risk assessments; judicial notice can be taken that CPS submitted verification of such scoring in past hearings which is indicative that there is a way for CPS to verify scoring. It [sic–is?] also stunning that CPS policy does not outline the scoring for risk assessments.

On the basis of this reasoning, the ALJ ordered that petitioner's name be expunged from the Registry.

Respondent sought a rehearing, contending that a computer system "glitch" had prevented it from printing off the scoring for the individual questions on petitioner's risk assessment. Respondent contended that this glitch, which had been a regular occurrence, had since been remedied, and respondent was able to now print out the scoring for the individual questions. A second ALJ granted respondent's motion: "Because the hearing record is inadequate for judicial review and there is newly discovered evidence that could affect the outcome of the original hearing, Respondent has established a basis for rehearing." At the rehearing, which was conducted by a third ALJ, the parties agreed to incorporate the evidence from the prior hearing into the rehearing. The only new evidence submitted came from respondent in the form of the printed-out scoresheet for the risk assessment. Witnesses testified that the scoring in the printed-out scoresheet was the same document submitted at the first hearing albeit with the proper scoring on it. The third ALJ found that, apart from the scoring differences, both risk assessments were essentially the same document. The third ALJ found that petitioner had a neglect score of three and an abuse score of four, which placed her "within the high range and thus requires placement on Central Registry with the substantiation of physical abuse." The ALJ, accordingly, ruled that petitioner's placement on the Registry was proper, and it reversed the first ALJ's decision.

Petitioner sought review of this decision in the circuit court. The circuit court ultimately sided with respondent:

> I haven't had anybody allege that there wasn't a computer issue in this matter. An affidavit was filed at the time of the request of rehearing stating a computer issue. Subsequent to that, the rehearing was granted by the second Administrative Law Judge. I don't know how that works there. It seems a little strange to me. No one told me that was not the policy. It seems strange to me.

> There was a telephone conference. I think I am stuck with this. It was agreed that the prior testimony introduced at the second hearing, the parties would produce additional witnesses. At that hearing the agency did present the necessary documentation to show how they arrived at the risk assessment and the score that placed [petitioner] on the Central Registry.

> \* \* \*

> It says here the reasons on the record were found to be an agency [sic] to be inadequate for purposes of judicial review. And we have to look at why wasn't it presented here, wasn't available, was due to a dysfunction of the computer system. Therefore, I would think it has to be treated like any other mistake or inadvertence on the part which the Court of Appeals usually gives another shot at that.

> Here it was presented, not due to the fault of the agency's error, but because of the computer malfunction. That's basically what their affidavit says. Then the parties agreed that additional testimony would come in. The parties agreed testimony from the first hearing could be used, which we look at under the manual

PSM 717-3.[2]  It indicates that a rehearing is a full hearing, which is granted when the original hearing is inadequate for the purpose of a judicial review or newly discoverable evidence that would affect the outcome of the original hearing.  While this is not newly discovered, it wasn't available due to computer error.

Accordingly, the circuit court found that this "falls under that broadened category, wasn't available because they couldn't present it because of the computer system.  That, in essence, was new evidence.  I don't know if it was recently discovered.  It was just unavailable.  They made it unavailable."  Additionally, the circuit court found that petitioner "was represented by counsel at that particular time.  I think she has to ride with the counsel, that counsel agreed to have this additional testimony put in."  In light of this, the circuit court found that the rehearing complied with PSM 717-3 and MCL 24.287,[3] and it affirmed the decision of the third ALJ denying petitioner's request for expungement from the Registry.

## II.  ANALYSIS

## A.  STANDARD OF REVIEW

"This Court reviews a lower court's review of an agency decision to determine 'whether the lower court applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings.' " *Dignan v Mich Pub Sch Employees Retirement Bd*, 253 Mich App 571, 575; 659 NW2d 629 (2002) (citation omitted).  We have previously explained that the standard of review for administrative reviews "is the same as a 'clearly erroneous' standard of review," which occurs "when, 'on review of the whole record, this Court is left with the definite and firm conviction that a mistake has been made.' " *Id*. at 575-576 (citations omitted).  "Generally, this Court will presume that an administrative body has acted correctly and that its orders are valid." *Fritz v St Joseph Co Drain Comm'r*, 255 Mich App 154, 162; 661 NW2d 605 (2003).  Additionally, "when there is sufficient evidence to support an agency's decision, a court may not substitute its judgment for that of the agency, even if the court would have reached a different result," and "a court will not set aside findings merely on the basis that alternative findings could also have been supported by substantial evidence on the record." *Id*. at 163.  Finally, questions of statutory interpretation, construction, and application are reviewed de novo. *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010).

## B.  REHEARING

Petitioner argues that the circuit court made an error of law in its application of MCL 24.287.  We agree.

MCL 24.287 of the Administrative Procedures Act of 1969, MCL 24.201 *et seq*., provides the basis upon which a rehearing may be granted:

---

[2] Children's Protective Services Policy Manuals.

[3] As will be discussed in the proceeding sections, MCL 24.287 governs administrative rehearings.

(1) An agency may order a rehearing in a contested case on its own motion or on request of a party.

(2) Where for justifiable reasons the *record of testimony made at the hearing is found by the agency to be inadequate for purposes of judicial review*, the agency on its own motion or on request of a party shall order a rehearing. [Emphasis added.]

Similarly, Mich Admin Code, R 792.10136(1) provides: "Where for justifiable reasons the record of testimony made at the hearing is found to be inadequate for purposes of judicial review, the administrative law judge on his or her own initiative, or on request of a party, shall order a rehearing." PSM 717.3 appears to offer an additional reason for a rehearing:

A rehearing is a full hearing, which is granted when the original hearing record is inadequate for purposes of judicial review *or there is newly discovered evidence that could affect the outcome of the original hearing*.

A reconsideration is a paper review of the facts, law and any new evidence or legal arguments. A reconsideration is granted when the original hearing record is adequate for judicial review and a rehearing is not necessary but a party believes the ALJ failed to accurately address all the issues.

\* \* \*

The department should file a written request for rehearing/reconsideration if any of the following exists:

• *Newly discovered evidence, which could affect the outcome of the original hearing*. [Emphasis added.]

The PSM, accordingly, goes beyond that which is provided in the statute. The circuit court appears to have relied on both PSM 717.3 and MCL 24.287, but it is not clear from its decision to what extent it relied on each. Petitioner raises a challenge to PSM 717.3, contending that it is merely an internal department manual with no binding force of law. We agree. An agency may promulgate rules that have the full force and effect of law. *Goins v Greenfield Jeep Eagle, Inc*, 449 Mich 1, 8; 534 NW2d 467 (1995). In order for a rule to be properly promulgated by an agency, it must follow various procedures, including providing notice to the public and allowing interested persons "an opportunity to present data, views, questions, and arguments." MCL 24.241. See *Goins*, 449 Mich at 9. If these procedures are not complied with, a rule will not have the force of law. *Goins*, 449 Mich at 9.

There is no indication from the record that the PSM is a promulgated rule with the binding force of law, and respondent has presented no evidence or authority indicating otherwise. In fact, the manual itself makes no suggestion that it is binding and, instead, gives every indication that it is an internal guidance manual for respondent. Furthermore, Michigan law suggests that such a manual does not have the full force of law. See, e.g., *Hegadorn v Dep't of Human Servs Dir*, 503 Mich 231, 249 n 11; 931 NW2d 571 (2019) ("The State Medicaid Manual is published by the CMS

to help guide states in administering the Medicaid program. The manual is not a product of formal rulemaking and does not have the force of law."); *Goins*, 449 Mich at 10 (discussing a Secretary of State "manual" and stating that, "[b]ecause it was never properly promulgated as a rule, it could not have had the force of law"); *Powers v Dep't of Social Servs*, 179 Mich App 416, 419; 446 NW2d 505 (1989) (citations omitted) (discussing the Department of Social Services' "administrative manual" and stating that "[w]e note that administrative policies not promulgated under the rule-making provisions of the APA are 'without legal authority or effect under Michigan law' "). Therefore, to the extent that the second ALJ or the circuit court believed that the PSM was binding, such a belief was erroneous. A rehearing could be granted only under the terms of MCL 24.287, which did not include criteria for newly discovered evidence.[4]

Turning now to MCL 24.287 itself, we agree with petitioner's position that the record was not inadequate for judicial review such that a rehearing was warranted. Subsection (2) provides that a rehearing is permitted when "the record of testimony made at the hearing is found by the agency to be inadequate for purposes of judicial review." The "record of testimony" includes evidence beyond that of oral testimony from a witness. See *Campbell v Marquette Prison Warden*, 119 Mich App 377, 382; 326 NW2d 516 (1982). MCL 24.286(1) provides that the "official record of a hearing . . . shall include:

> (a) Notices, pleadings, motions and intermediate rulings.
>
> (b) Questions and offers of proof, objections and rulings thereon.
>
> (c) Evidence presented.
>
> (d) Matters officially noticed, except matters so obvious that a statement of them would serve no useful purpose.
>
> (e) Proposed findings and exceptions.
>
> (f) Any decision, opinion, order or report by the officer presiding at the hearing and by the agency.

In the context of the Parole Board, our Supreme Court has stated that the Board must "provide a sufficient explanation for its decision, thereby allowing meaningful appellate review." *Glover v Parole Bd*, 460 Mich 511, 519; 596 NW2d 598 (1999).

Based on our review of the record, we agree with petitioner that the record was clear and adequate and that the first ALJ provided a sufficient explanation for its decision to allow meaningful judicial review. Although respondent failed to present the individual scoring for the

---

[4] Newly discovered evidence entails its own rules and principles. A party is certainly not prohibited by MCL 24.287 from seeking a new trial or hearing based on newly discovered evidence. See MCR 2.611(A)(1)(f); *South Macomb Disposal Auth v American Ins Co*, 243 Mich App 647, 655; 625 NW2d 40 (2000). However, the present case involves a rehearing, not a request for a new hearing or trial.

risk assessment at the first hearing, this did not make the record inadequate for judicial review. The record by all accounts met the requirements of MCL 24.286(1) and contained the entirety of the evidence necessary for the ALJ's decision. The record may have been *incomplete*, but not necessarily *inadequate*. The language of MCL 24.287 is clear and plain, and we must follow its terms without deviation and without injecting our own language or meaning into the statute. See *McQueer v Perfect Fence Co*, 502 Mich 276, 286; 971 NW2d 584 (2018); *Griffin v Griffin*, 323 Mich App 110, 120; 916 NW2d 292 (2018). Although the first ALJ's decision was based on respondent's failure to present evidence—and although that failure was apparently attributable to a computer error—a rehearing is not permitted for the failure to present evidence. Moreover, we note that, based on our review of the record, respondent made no attempt to request an adjournment or to even alert the first ALJ to the computer system error. Accordingly, the circuit court made an error of law in upholding the second ALJ's decision to order a rehearing.

We reject respondent's contention that petitioner waived any challenge to the rehearing. Waiver is an "intentional relinquishment or abandonment of a known right." *In re Ferranti*, 504 Mich 1, 33; 934 NW2d 610 (2019). Respondent maintains that, because petitioner did not respond to the motion for rehearing, petitioner waived this issue for appeal. Respondent presents no authority demonstrating that petitioner had to file a response opposing the motion for rehearing. Mich Admin Code, R 792.10136, which governs motions for rehearing, makes no mention of such a response, and there appears to be no such requirement in the administrative code. The code provides that, if there is no rule governing a situation, then the Michigan court rules apply, Mich Admin Code, R 792.10102(3), and MCR 2.119(F)(2) categorically *prohibits* responses to a motion for rehearing or reconsideration. Furthermore, MCL 24.301 prohibits immediate judicial review of preliminary, procedural, or intermediate agency actions or rulings. The second ALJ's decision to grant the motion for rehearing was not a final order but merely a preliminary, procedural, or intermediate ruling. Finally, there is no indication from the record that petitioner or her counsel agreed to the rehearing. Rather, petitioner agreed that evidence from the first hearing could be incorporated into the second hearing. This was already *after* the rehearing had been granted, and such actions can hardly constitute the relinquishment or abandonment of her right to challenge the rehearing process itself.

We reverse and remand. On remand, the circuit court shall reinstate the first ALJ's decision expunging petitioner's name from the Registry. We do not retain jurisdiction.[5]

/s/ Michael F. Gadola
/s/ David H. Sawyer
/s/ Michael J. Riordan

---

[5] Given that we agree reversal is warranted, we need not address the other arguments raised by petitioner.